Filed 7/14/26  Morrow v. Metcalf CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| JOSH CARY MORROW, | B348925 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. 25STRO03394) |
| v. | |
| LAURIE ANN METCALF, | |
| Defendant and Respondent. | |

APPEAL from an order of the Superior Court of Los Angeles County, Erin Reed, Judge Pro Tempore.  Affirmed.

Josh Cary Morrow, in pro. per., for Plaintiff and Appellant.

Laurie Metcalf, in pro. per., for Defendant and Respondent.

_____

Josh Cary Morrow appeals from an order denying his request for a domestic violence restraining order against Laurie Metcalf after an evidentiary hearing. Morrow has not demonstrated error, and we affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

The matter before us is the second request for a domestic violence restraining order (DVRO) that Morrow filed against his mother, Laurie Metcalf, in less than two months. He filed the first in April 2025, and it was denied on the merits on May 8, 2025, after an evidentiary hearing.

Three weeks later, on May 29, 2025, then 39-year-old Morrow filed the present request for a DVRO against Metcalf. He represented himself throughout the proceedings. He asserted that the "abuse" that immediately precipitated his filing was (1) that Metcalf had not paid rent on his apartment in April and May 2025, although she had cosigned his lease and had verbally agreed to pay a portion of the rent, and (2) that Metcalf had "den[ied]" him "access" to the one-bedroom apartment she leased with her husband (Morrow's father) and had informed Morrow that he no longer had permission to receive his mail there and that she would mark his future mail "return to sender/no longer at this address." Morrow also stated that in July 2022, Metcalf refused to "cover" payments on his personal bank loan and "instructed" him to default on the loan, resulting in a collection action against him and a decrease in his credit score, necessitating a cosigner when he leased his apartment. He also alleged a history of purported verbal abuse by Metcalf, dating back to 2004.

Morrow checked boxes on form DV-100, requesting that the court issue against Metcalf an "order to not abuse," a no-contact

2

order, and a stay-away order.  He also filed proposed orders, asking the court (1) to require Metcalf to pay $3,950 for his past-due rent ($1,850 for April and $2,100 for May), plus $1,000 per month toward his ongoing rent obligation of $2,100 per month, with an option to modify the order to require her to contribute up to the full rental amount should he experience "reduced income, unemployment, or other financial hardship"; (2) to prohibit Metcalf from interfering with his mail or personal property at the residence she leased with Morrow's father; and (3) to "bar[]" Metcalf "from actions constituting financial abuse, such as coercing [Morrow] into defaulting on financial obligations or withholding agreed-upon or court-ordered funds."

In his papers supporting his request for a DVRO, Morrow stated that he "depends on [Metcalf], his mother, for financial support" because he is disabled and a "dependent adult" within the meaning of Welfare and Institutions Code section 15610.23. Subdivision (a) of this statute defines " '[d]ependent adult' " as "a person, regardless of whether the person lives independently, between the ages of 18 and 64 years who resides in this state and who has physical or mental limitations that restrict his or her ability to carry out normal activities or to protect his or her rights, including, but not limited to, persons who have physical or developmental disabilities, or whose physical or mental abilities have diminished because of age."  (Welf. & Inst. Code, § 15610.23, subd. (a).)  Morrow submitted documents from the Social Security Administration, stating that he became disabled on October 1, 2018, and as of April 22, 2024, his disability was "continuing." Morrow described his disability as a mental health condition.  He claimed Metcalf owed a "duty" to support him under Family Code section 3910, which provides, in pertinent part, "Each parent of a

child has an equal responsibility to maintain, to the extent of their ability, their child of whatever age who is incapacitated from earning a living and without sufficient means." (Fam. Code, § 3910, subd. (a).) Morrow indicated he was able to work, and detailed his employment history in his papers, but maintained that Metcalf had interfered with his employment by refusing to support him financially (e.g., "refus[ing] to assist with operational vehicle expenses," so that he would have an operable vehicle to use for work, and destabilizing his housing by not paying his rent).

Metcalf filed a response to Morrow's request for a DVRO, denying that she abused Morrow or initiated contact with him. She also stated that she owed no obligation to Morrow to pay his rent or debt or "to allow him to use [her] mailing address as his own." She did not dispute that she cosigned his lease but argued she did not owe him a duty of financial support.

On June 20, 2025, the trial court held a hearing on the DVRO request. At the outset, Morrow asked for a statement of decision. The court stated it would not issue a written statement of decision because "[t]his trial isn't going to take very long," based on Morrow's representation that he only intended to call one witness other than himself, his father.[1]

After swearing Morrow in, the court asked him to explain his case. Morrow discussed the past-due rent he wanted Metcalf to pay. The court stated, "This is not a small claims courtroom," and asked Morrow to describe any domestic violence that

---

[1] In his reply brief in support of his DVRO request, Morrow stated that his father had informed him in advance of the hearing that he would not testify against Metcalf, his wife.

4

supported his request for a DVRO. Morrow asserted that the court had "broad authority to issue financial orders in a [DVRO] case" based on "financial abuse," and argued that the exhibits he submitted with his request demonstrated "proof of recent financial abuse" by Metcalf. Later, he clarified that the current abuse he was alleging was "[c]oercive control, financial abuse, [and] psychological emotional abuse." He testified that his mental health condition "put[s] [him] at extreme vulnerability for exploitation, manipulation, and [he] should not be unhoused through [Metcalf's] breach of contract." He also stated that Metcalf made false claims about his mental health, including that he required treatment and needed to be on medication.

The court explained that it would review with Morrow the exhibits he submitted with his DVRO request so that the court could admit them into evidence. The court indicated that it would consider exhibit A-1, a 2020 assessment report regarding his mental health condition; exhibit A-2, documentation from the Social Security Administration regarding his disability status, most recently from April 2024; and exhibit A-4, "Petitioner's Timeline of Abuse 1996 – Present."[2] The court declined to consider exhibit A-3, a document discussing medical treatment Morrow received after a fall from a horse as a child. Morrow claimed the injury he sustained resulted from Metcalf's negligence. The court found the document to be irrelevant.

_____

[2] As Morrow notes on appeal, the record does not expressly state that the trial court admitted exhibits A-1, A-2, and A-4 into evidence. We reject Morrow's suggestion that this constitutes error, as the court's comments made clear that it considered these exhibits and did not exclude them.

5

The court admitted into evidence exhibit B-1, documents showing Morrow used Metcalf's address on his driver's license, employment records, tax returns, etc.; exhibit B-2, documents showing the past-due rent owed on Morrow's apartment, the issuance of a 3-day notice to pay rent or quit, and that Metcalf was a cosigner on the lease; exhibit B-3, documents indicating that Morrow contributed a total of $1,905.60 toward the rent on his apartment in the nine-month period between February and October 2024 (the monthly obligation was $2,100 per month); and exhibit B-4, letters to Morrow from his parents, dated May 14, 2025, stating that their residence was not his "permanent residence address," he no longer had their permission to receive his mail there, and they would mark future mail "return to sender/no longer at this address."  In response to a question from the court, Morrow acknowledged he was not on the lease for his parents' residence.

The court also admitted into evidence exhibits C-1–C-3, documents regarding Morrow's July 2022 default on a personal bank loan after Metcalf declined to make the monthly payments, and exhibit C-4, October-November 2024 correspondence between Morrow and Metcalf, culminating in a demand from Morrow that Metcalf "cease and desist her financial abuse," after a dispute between them regarding the payment of rent on his apartment.

The court excluded exhibits D-1–D-4, finding them to be irrelevant.  The exhibits included documents regarding Morrow's past and current employment (which Morrow described as "trial work" he engaged in while maintaining his disability status with the Social Security Administration), as well as a video editor profile he created for purposes of prospective employment; and documents showing his education and certifications regarding

bitcoin, blockchain, and cryptocurrencies, and his advice to Metcalf to invest in bitcoin, which she allegedly declined. Morrow testified that he had been employed at a market since April 14, 2025, and the court did not exclude that testimony.

Morrow called his father as a witness to Metcalf's alleged abuse. After he was sworn in, Morrow's father stated that he was married to Metcalf, and he asserted his privilege not to testify against her. The court ruled that pursuant to Evidence Code section 970,[3] Morrow's father did not have to testify. Morrow asked the court if his father could be compelled "to testify to his own actions[,] not his wife's actions." The court inquired about the specific questions Morrow wanted to ask his father. Morrow responded, "Well, I didn't foresee this event so I'm going to ask him as I go, but if Your Honor objects to a question, we can --" The court interjected, "Well, no. I think the point is that he doesn't have to testify against his spouse period so -- because she's a party to the proceedings so [*sic*] I'm going to exclude his testimony altogether." Morrow queried whether he should add his father as a party to the proceedings, and the court informed him it was too late to do so.[4]

---

[3] Evidence Code section 970 provides, "Except as otherwise provided by statute, a married person has a privilege not to testify against his spouse in any proceeding."

[4] Morrow's papers and testimony include allegations of past abuse by his father. Because Morrow did not file a request for a DVRO against his father, and the allegations relate to incidents that occurred more than two decades ago, there is no reason for us to include a summary of the allegations herein.

7

The court stated it was prepared to rule. Morrow indicated he wanted to examine Metcalf. The court replied, "[S]he doesn't have to testify against herself." Morrow explained that he wanted "an opportunity to refute her evidence submissions [in her response to the DVRO request] and question her about this." The court responded, "Based on your own testimony that you've provided, your burden of proof, you haven't met." The court denied Morrow's request for a DVRO against Metcalf, stating for the record, "The petitioner has not met his burden of proof to show the existence of domestic violence warranting a restraining order." In a minute order issued the same day, the court stated, in pertinent part, "Petitioner's request for statement of decision in writing is denied as the Court delivered its statement of decision on the record pursuant to Family Code 6340, subdivision (b), Code of Civil Procedure 632, and Rule of Court 3.1590(n)."

Morrow filed a timely notice of appeal from the order.

## DISCUSSION

Morrow contends we must reverse the order denying his request for a DVRO against Metcalf and remand the matter for a new hearing, arguing the trial court erred (1) in denying his request for a statement of decision; (2) in excluding some of his exhibits, not considering others, and "shielding [Metcalf] from all examination"; (3) in disallowing examination of his father based on an "overbroad application of spousal privilege"; and (4) in "dismiss[ing] uncontradicted evidence of abuse" and failing to consider the historical pattern of abuse.[5]

---

[5] Metcalf filed a one-paragraph respondent's brief, arguing Morrow "has no grounds for an appeal," and the "record shows
*(Fn. is continued on the next page.)*

8

## A. The Trial Court Complied With Applicable Law When It Stated the Reasons for Its Decision on the Record

Citing Code of Civil Procedure section 632, Morrow argues the court erred in denying his request for a statement of decision. This statutory provision states, in pertinent part: "In superior courts, upon the trial of a question of fact by the court, written findings of fact and conclusions of law shall not be required. The court shall issue a statement of decision explaining the factual and legal basis for its decision as to each of the principal controverted issues at trial upon the request of any party appearing at the trial. . . . The request for a statement of decision shall specify those controverted issues as to which the party is requesting a statement of decision." (Code Civ. Proc., § 632, subd. (a).) "[W]hen the trial is concluded within one calendar day . . . , the statement of decision may be made orally on the record in the presence of the parties." (Code Civ. Proc., § 632, subd. (b).) Morrow points to nothing in the record indicating he specified controverted issues he wanted the court to include in a statement of decision following the one-day hearing.

In his appellate briefing, Morrow does not discuss the applicability of Family Code section 6340, subdivision (b), a statutory provision cited by the court in its minute order, which provides, "The court shall, upon denying a petition under this part [the Domestic Violence Prevention Act (DVPA); Fam. Code, § 6200 et seq.], provide a brief statement of the reasons for the

---

the [c]ourt's decision was sound." She also represented that on August 28, 2025, the superior court granted her a three-year restraining order against Morrow.

9

decision in writing or on the record. A decision stating 'denied' is insufficient."

Here, Morrow sought a DVRO under the DVPA. In denying his request for a DVRO, the trial court stated on the record that he had "not met his burden of proof to show the existence of domestic violence warranting a restraining order." Morrow does not explain what else he would have liked the court to address in its oral statement of decision, and he may not now complain that the court should have identified issues for him and addressed them. Thus, Morrow has not demonstrated the statement of decision was insufficient under the law.

**B.** **Morrow Has Not Shown the Trial Court Abused Its Discretion in Denying His Request for a DVRO**

**1.** *Applicable law and standard of review*

The DVPA "authorizes the trial court to issue a restraining order 'for the purpose of preventing a recurrence of domestic violence and ensuring a period of separation of the persons involved, if an affidavit . . . shows, to the satisfaction of the court, reasonable proof of a past act or acts of abuse." (*In re Marriage of Nadkarni* (2009) 173 Cal.App.4th 1483, 1494.) Under the DVPA, "abuse" includes "disturbing the peace of the other party," which "refers to conduct that, based on the totality of the circumstances, destroys the mental or emotional calm of the other party." (Fam. Code, §§ 6203, subd. (a)(4), 6320, subds. (a) & (c).) "This conduct includes, but is not limited to, coercive control, which is a pattern of behavior that in purpose or effect unreasonably interferes with a person's free will and personal liberty." (Fam. Code, § 6320, subd. (c).)

"Examples of coercive control include, but are not limited to, unreasonably engaging in any of the following:

10

"(1) Isolating the other party from friends, relatives, or other sources of support.

"(2) Depriving the other party of basic necessities.

"(3) Controlling, regulating, or monitoring the other party's movements, communications, daily behavior, finances, economic resources, or access to services.

"(4) Compelling the other party by force, threat of force, or intimidation, including threats based on actual or suspected immigration status, to engage in conduct from which the other party has a right to abstain or to abstain from conduct in which the other party has a right to engage.

"(5) Engaging in reproductive coercion . . . . (Fam. Code, § 6320, subd. (c).)

"On review of an order granting or denying a protective order under the DVPA, we consider whether the trial court abused its discretion. [Citation.] ' "The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason. When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court." ' [Citation.] We accept as true all evidence tending to establish the correctness of the trial court's findings, resolving every conflict in the evidence in favor of the [order]. [Citation.] Under the substantial evidence test, the pertinent inquiry is whether substantial evidence supports the court's finding—not whether a contrary finding might have been made." (*In re Marriage of Fregoso & Hernandez* (2016) 5 Cal.App.5th 698, 702; *Burquet v. Brumbaugh* (2014) 223 Cal.App.4th 1140, 1143.) Thus, we resolve all " 'questions of credibility in favor of the prevailing party and indulge all reasonable inferences to support the trial court's

11

order.' " (*Phillips v. Campbell* (2016) 2 Cal.App.5th 844, 849-850.)

### 2. *The Trial Court Did Not Err in Finding Morrow Did Not Prove Abuse*

By his DVRO request, Morrow primarily sought financial support from Metcalf and access to her residence. His claim of financial abuse and coercive control hinged on his assertion that Metcalf had a *duty* under Family Code section 3910 to support him financially because he was a disabled, dependent adult. Nothing in the record before us indicates any court has made a finding that Metcalf owed such a duty, or that Morrow fell within the definition of a "dependent adult" under Welfare and Institutions Code section 15610.23, subdivision (a). Even assuming Morrow could show he was a "dependent adult," if he wanted the trial court to make a finding of duty—and assuming for purposes of his argument that a DVRO proceeding was an appropriate forum to adjudicate such a claim—he did not present sufficient evidence or argument, as a matter of law.

"Family Code section 3910 makes the parents of an adult child 'who is incapacitated from earning a living and without sufficient means' financially responsible for maintaining that child 'to the extent of their abilit[ies].' " (*In re Marriage of Cady & Gamick* (2024) 105 Cal.App.5th 379, 383, quoting Fam. Code, § 3910, subd. (a).) To the extent this statutory provision could be employed to compel Metcalf to pay Morrow's expenses, Morrow did not present evidence, or even claim, that at the time of the DVRO hearing he was incapacitated from earning a living due to his mental health condition. He testified that he was employed, and he blamed his recent past inability to hold a job on a lack of

12

financial and emotional support from Metcalf, not his mental health condition.

The trial court's finding that Morrow did not meet his burden to establish the existence of "domestic violence" (i.e., abuse) by Metcalf is supported by substantial evidence in the record. Viewing the evidence in a light most favorable to the court's decision, as we must, the evidence showed Morrow repeatedly initiated contact with Metcalf to demand money from her, which resulted in arguments and claims by Morrow that Metcalf was financially, psychologically, and emotionally abusive toward him. The trial court did not exceed the bounds of reason in declining to grant Morrow a DVRO on this record.

### 3. *Morrow's contentions of reversible evidentiary and cumulative error are without merit*

A lengthy discussion of these claims of error is unwarranted because Morrow has not demonstrated a reasonable probability that he would have achieved a more favorable result if the trial court had admitted all of the evidence he sought to introduce. (*In re Marriage of F.M. & M.M.* (2021) 65 Cal.App.5th 106, 118 ["To establish prejudice, an appellant must demonstrate that there was a ' " 'reasonable probability that in the absence of . . . error, a result more favorable to the appealing party would have been reached' " ' "].)

We reject Morrow's assertion that excluded evidence of his medical treatment after a fall from a horse as a child (exhibit A-3) informs his current claims of financial abuse, coercive control, and psychological and emotional abuse.

Excluded evidence Morrow maintains "demonstrated [his] efforts at financial independence" (exhibits D-1–D-4)—employment records, a video editor profile, his knowledge of and

interest in Bitcoin investment—does not tend to prove Metcalf had a duty to support him financially or an obligation to allow him access to her residence.

Morrow faults the trial court for "failing to admit or address" three exhibits he submitted with his reply papers (exhibits E-1–E-3). At the hearing, Morrow mentioned that he had submitted these exhibits ("And then in the reply was exhibit E, E-1 through E-3"). However, when the court reviewed his other exhibits with him, one-by-one, he did not ask to address these three exhibits or indicate that he wanted the court to rule on their admissibility. In any event, Morrow has not demonstrated that these exhibits show abuse. In his appellate briefing, he asserts the documents show that Metcalf conditioned her financial support on him taking medication for his mental health condition. Even if this were true (the "proof" regarding imposition of this condition is an email from Morrow to Metcalf, exhibit E-1), it does not establish Metcalf had a duty to support Morrow financially or that she committed an act of *abuse* by declining to continue to pay his way.

Morrow argues the trial court erred in not allowing him to examine his father or Metcalf. Here, too, Morrow fails to demonstrate prejudice. Morrow has a list of grievances against his parents, dating back to 1996, that he would like to air. But none of the claims he asserted against Metcalf warrants issuance of a DVRO, for the reasons already explained.

We also reject Morrow's contention that "cumulative errors deprived [him] of a fair hearing and full opportunity to be heard and offer evidence, requiring reversal." There was no miscarriage of justice, notwithstanding Morrow's complaints about the court interrupting him and excluding evidence.

14

## DISPOSITION

The June 20, 2025 order is affirmed.  Respondent is entitled to recover costs on appeal.

NOT TO BE PUBLISHED


M. KIM, J.

We concur:


BENDIX, Acting P. J.


WEINGART, J.